UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

STRIKE 3 HOLDINGS, LLC,
    *Plaintiff*,

v.

JOHN DOE, *subscriber assigned IP Address 66.30.11.67*,
    *Defendant*.

No. 3:24-cv-02016 (VAB)

**ORDER ON MOTION FOR LEAVE TO SERVE THIRD PARTY SUBPOENA**

Strike 3 Holdings, LLC ("Plaintiff" or "Strike 3") alleges that John Doe ("Defendant"), identified only by their IP address, has committed copyright infringement by downloading and distributing Plaintiff's copyrighted adult films using BitTorrent, a peer-to-peer file distribution network. Complaint ¶¶ 1, 2, 4, ECF No. 1 (Dec. 12, 2024) ("Compl.").

Strike 3 moves under Federal Rule of Civil Procedure 26(d)(1) for leave to serve a third-party subpoena on Defendant's internet service provider ("ISP"), before a Rule 26(f) discovery conference is held, for the limited purpose of discovering Defendant's identity. *See* Mot. for Leave to Serve Third Party Subpoena Prior to a Rule 26(f) Conf., ECF No. 10 (Jan. 10, 2025) ("Mot."). Strike 3 argues that there is good cause to allow the requested subpoena because it is the only way to identify the Defendant, a critical step toward pursuing this litigation and advancing its copyright infringement claim.

For the reasons set forth in this Order, Strike 3's motion is **GRANTED**, subject to the conditions enumerated below.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

A.   <u>Factual Allegations</u>

Strike 3 allegedly is the owner of adult motion pictures distributed through a variety of adult websites and DVDs. Compl. ¶¶ 2–3.

The websites on which Strike 3's motion pictures appear allegedly have problems with internet piracy, and Strike 3's content is often pirated. *Id.* ¶ 16.

BitTorrent allegedly is a system designed to quickly distribute large files over the internet. *Id.* ¶ 17. It allegedly allows users to connect to the computers of other BitTorrent users, in order to simultaneously download and upload pieces of the file from and to other users. *Id.*

Strike 3 allegedly has developed, owns, and operates an infringement detection system, named "VXN Scan." *Id.* ¶ 27.

Using VXN Scan, Strike 3 allegedly discovered that the Defendant's IP address had been used to illegally download and distribute 24 of Strike 3's copyrighted motion pictures (the "Works") through the BitTorrent file network. *Id.* ¶¶ 4, 27–46.

Strike 3 allegedly owns the copyrights to these motion pictures, and they allegedly have been registered with the United States Copyright Office. *Id.* ¶ 45.

Defendant allegedly downloaded and distributed the videos anonymously and the only identifying information that Strike 3 has is the IP address used to infringe its content. *Id.* ¶¶ 1, 5.

The Internet Service Provider, Comcast Cable Communications, allegedly can identify the individual who owns the IP address that downloaded the content at issue in this suit, 66.30.111.67. *Id.* ¶ 5.

B.   <u>Procedural Background</u>

On December 19, 2024, Strike 3 filed the Complaint. Compl.

On January 10, 2025, Strike 3 filed a motion for leave to serve a third-party subpoena in

2

advance of a Rule 26(f) conference. Mot.; Mem. of L. in Support of Pl.'s Mot. for Leave to Serve Third Party Subpoena Prior to a Rule 26(f) Conf., ECF No. 11. ("Mem.").

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 26(d), "A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except . . . when authorized . . . by court order." When considering such requests, courts in this Circuit apply a "flexible standard of reasonableness and good cause." *Strike 3 Holdings, LLC v. Doe*, 1:23-cv-05438-MKV, 2023 WL 6607111, at *1 (S.D.N.Y. Oct. 10, 2023) (quoting *Digital Sin, Inc. v. John Does 1–176*, 279 F.R.D. 239, 241 (S.D.N.Y. 2012); *Strike 3 Holdings, LLC v. Doe*, 19-CV-5818 (AT) (JLC), 2019 WL 5459693, at *1 (S.D.N.Y. Oct. 9, 2019).

In weighing whether a party has demonstrated good cause for the purposes of Rule 26(d), courts generally apply the *Arista* test[1] laid out by the Second Circuit. *See, e.g.*, *Strike 3 Holdings, LLC v. Doe*, No. 19-CV-1152 (MPS), 2019 WL 3859514, at *2 (D. Conn. Aug. 16, 2019); *Corey Sipkin Photography LLC v. ABC Corp.*, 23-cv-4754 (LJL), 2023 WL 6881683, at *1 (S.D.N.Y. Oct. 17, 2023). In *Arista Records, LLC v. Doe 3*, the court held that the principal factors governing such a determination include:

> (1) [the] concrete[ness of the plaintiff's] showing of a prima facie claim of actionable harm, . . . (2) [the] specificity of the discovery request, . . . (3) the absence of alternative means to obtain the subpoenaed information, . . . (4) [the] need for the subpoenaed information to advance the claim, . . . and (5) the [objecting] party's expectation of

---

[1] In *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 119 (2d Cir. 2010), a defendant sought to quash a subpoena served on an internet service provider to disclose the identities of internet users who had allegedly illegally downloaded and/or distributed music online. Accordingly, the posture of *Arista* is not identical to this case. However, since *Arista*, the majority of courts in this Circuit have applied the *Arista* factors to determine whether there is good cause to grant a motion for expedited discovery in copyright infringement cases like this one. *See Strike 3 Holdings, LLC v. Doe*, No. 3:21-cv-106-VLB, 2021 WL 6932974, at *2 (D. Conn. Feb. 18, 2018); *Strike 3 Holdings, LLC v. Doe*, 3:23-CV-1646 (SVN), 2024 WL 473773, at *2 (D. Conn. Feb. 7, 2024); *Corey Sipkin Photography LLC*, 2023 WL 6881683, at *2; *see also Strike 3 Holdings, LLC v. Doe*, No. 18-cv-2674-NLH-JS, 2020 WL 3567282 (D.N.J. June 30, 2020). While at least one court has questioned the applicability of the *Arista* test to Rule 26(d) motions, *see Strike 3 Holdings, LLC v. Doe*, 331 F.R.D. 14 (E.D.N.Y. 2019), others have criticized that court's reasoning, *see Strike 3 Holdings, LLC v. Doe*, 19-cv-5818 (AT) (JLC), 2019 WL 5459693, at *2 (S.D.N.Y. Oct. 9, 2019). Given the clear majority of courts in the Circuit applying *Arista* in cases like these, and the absence of an alternative standard to determine whether the plaintiff has demonstrated good cause under Rule 26(d), the Court will apply the *Arista* test here.

   privacy[.]

604 F.3d 110, 119 (2d Cir. 2010) (alterations in original) (quoting *Sony Music Ent. Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 564 (S.D.N.Y. 2004)).

**III.   DISCUSSION**

   A.   Strike 3 Litigation Generally

   Strike 3 has filed around 302 similar cases in this District since 2017.[2] In each, Strike 3 alleges that the Doe Defendant has infringed Strike 3's copyright by illegally downloading and/or distributing its copyrighted adult films. In each case, Strike 3 identifies the Doe Defendant only by IP address, and then moves, under Federal Rule of Civil Procedure 26(d)(1), for leave to serve a pre-Rule 26(f) conference third-party subpoena on the ISP, in order to identify the defendant.

   Courts generally grant these motions, and sometimes impose conditions to protect the defendant's privacy. *See, e.g.*, Order Granting Motion for Leave to Serve Third Party Subpoena, *Strike 3 Holdings, LLC v. Doe*, No. 3:23-cv-1390 (RNC), ECF No. 11 (D. Conn. Nov. 13, 2023); Order Granting in Part Motion for Leave to Serve a Third-Party Subpoena, *Strike 3 Holdings, LLC v. Doe*, No. 3:23-cv-1263 (OAW), ECF No. 13 (D. Conn. Jan. 3, 2024); Order Granting Motion for Early Third Party Discovery Order, *Strike 3 Holdings, LLC v. Doe*, No. 3:23-cv- 1119 (KAD), ECF No. 11 (D. Conn. Sept. 5, 2023); Order Granting on Conditions Plaintiff's Motion for Leave to Serve Third Party Subpoena Prior to Rule 26(f) Conference, *Strike 3 Holdings, LLC v. Doe*, No. 3:23-cv-1118 (JCH), ECF No. 12 (D. Conn. Sept. 8, 2023).

   In short order, Strike 3 then later files a notice of settlement and/or a notice of voluntary dismissal under Federal Rule of Civil Procedure 41(a)(1)(A)(i). *See the same cases*, Notice of Voluntary Dismissal, *Strike 3 Holdings, LLC v. Doe*, No. 3:23-cv-1390 (RNC), ECF No. 12 (D.

---

[2] This statistic is accurate as of July 18, 2025.

4

Conn. Jan. 11, 2024); Notice of Settlement & Notice of Voluntary Dismissal of Case, *Strike 3 Holdings, LLC v. Doe*, No. 3:23-cv-1263 (OAW), ECF Nos. 14–15 (D. Conn. Jan. 31, 2024); Notice of Settlement & Notice of Voluntary Dismissal of Case, *Strike 3 Holdings, LLC v. Doe*, No. 3:23-cv-1119 (KAD), ECF Nos. 14–15 (D. Conn. Nov. 20, 2023); Notice of Voluntary Dismissal of Plaintiff, *Strike 3 Holdings, LLC v. Doe*, No. 3:23-cv-1118 (JCH), ECF No. 17 (D. Conn. Jan. 16, 2024).

These lawsuits are not confined to this District. In 2019, Judge Orenstein wrote that Strike 3 had filed 276 of these cases in the Eastern District of New York since 2017. *Strike 3 Holdings, LLC v. Doe*, 331 F.R.D. 14, 19 (E.D.N.Y. 2019). Similarly, Strike 3 filed over 200 such cases in the Northern District of California in 2022 alone.[3] And, between 2017 and early 2023, Strike 3 is estimated to have filed 9,508 copyright infringement lawsuits in federal courts throughout the United States.[4]

Judges around the country have expressed concerns about both the volume of litigation brought by Strike 3, and its methods.[5] *See, e.g.*, *Strike 3 Holdings, LLC v. Doe*, No. 18-CV-1945 (JBA), 2019 WL 1122984, at *3 (D. Conn. Mar. 12, 2019) ("This Court is sensitive to the fact that the sheer volume of cases commenced by Strike 3 Holdings, and their brief procedural history – commencement of the action, receipt of permission to serve a third-party subpoena on an ISP provider prior to the 26(f) conference, and voluntary dismissal of the actions weeks or months thereafter – is suggestive of coercive settlement practices that this Court does not

---

[3] Joe Dworetzky, *Strike 3's Lawyer Defends Reliability of Proprietary Technology, Vows To Prove Infringement*, SFGATE (Feb. 17, 2023), https://www.sfgate.com/news/bayarea/article/strike-3-s-lawyer-defends-reliability-of-17790945.php.
[4] *Id*.
[5] Malibu Media, an erotica website, is another prolific copyright litigant using tactics virtually identical to Strike 3's. *See generally* Gabe Friedman, *The Biggest Filer of Copyright Lawsuits? This Erotica Web Site*, THE NEW YORKER (May 14, 2014), http://www.newyorker.com/business/currency/the-biggest-filer-of-copyright-lawsuits-this-erotica-web-site; *see also Malibu Media, LLC v. Doe*, No. 15-cv-4441, 2016 WL 3383758, at *3 (N.D. Cal. June 20, 2016) ("The damages exposure in this case, as with Malibu Media's many other cases, is significant, so a defendant may feel pressure to settle even a meritless case. Coupled with the taboo nature of the subject matter, there remains potential for abuse.").

condone."); *Strike 3 Holdings, LLC v. Doe*, No. 18-CV-2648 (VEC), 2019 WL 78987, at *4 (S.D.N.Y. Jan. 2, 2019) ("As numerous district courts in this Circuit have pointed out, copyright holders such as Plaintiff are repeat litigants who have, in the past, engaged in 'abusive litigation practices,' including coercive settlement practices."); *Strike 3 Holdings, LLC v. Doe*, No. 2:18-CV-00824-CB, 2018 WL 3688415, at *1 (W.D. Pa. Aug. 3, 2018) ("The Court shares the concerns of a number of district courts that the defendants might be subject to coercive settlement tactics absent limits.").

As Chief Judge Michael Shea of this District has noted, this pattern means that, "[t]he merits of the claims are not litigated, and the Court lacks any opportunity to determine whether the third-party subpoena procedures are fairly implemented and effective to protect the privacy interests of defendants identified by their ISPs." *Strike 3 Holdings, LLC v. Doe*, No. 3:21-cv-993 (MPS), 2021 WL 4776519, at *1 (D. Conn. Oct. 13, 2021).

This Court shares these concerns. More specifically, given the nature of the content at issue, defendants named in Strike 3's suits may feel pressure to settle, in order to avoid being identified publicly, even if they have not done anything wrong.[6]

Nevertheless, Strike 3 insists that it brings this litigation in good faith, in order to address its "serious problem" with BitTorrent infringement, which it argues threatens its ability to continue to produce content and to compensate its performers. Mem. at 2–3. "Strike 3 is mindful of the nature of the litigation and its goal is to not publicly disclose the choices that people make regarding the content they wish to enjoy. Moreover, Strike 3 does not seek to force anyone to settle unwillingly, especially anyone that is innocent." *Id.* at 3 (citations omitted).

---

[6] *See* Dworetzky, *supra* note 3 ("But even beyond the monetary damages, there is the additional risk that their name might come out in the litigation and leave them associated not only with illegal copying but with adult films to boot. Vondran said, 'we have people that have really good jobs in really prominent companies. So, you know, it's kind of shameful and they don't want to be associated. So they'll pony up a settlement to avoid that, even sometimes when they think they haven't done anything.'").

As a result, the Court will analyze the validity of the specific request placed before it, consistent with the applicable law.

B. The Specific Application of the *Arista* Factors

In the absence of any meaningful opportunity to test Strike 3's claims, it is difficult to assess their veracity. Yet, as described further below, the *Arista* factors clearly weigh in favor of allowing expedited discovery, and there is no way for Strike 3 to proceed in this litigation without the requested subpoenaed information.

1. The *Prima Facie* Showing of Actionable Harm

The first factor to consider when assessing whether a plaintiff has demonstrated good cause for expedited discovery is the concreteness of the plaintiff's showing of a *prima facie* claim of actionable harm. *Arista*, 604 F.3d at 119. Strike 3 argues that it has made a *prima facie* claim for copyright infringement, which has two elements: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Strike 3 alleges that it owns the copyrights to the Works and that they are original works of authorship. Compl. ¶¶ 48–49; Mem. at 5.

Strike 3 also has submitted affidavits by Patrick Paige, a computer forensics professional retained by Strike 3 to "analyze and retain forensic evidence captured by its infringement detection system"; Jorge Arco, a contractor for General Media Systems (the parent company of Strike 3), who works as an Enterprise Architect and took over the role of "executing declarations describing the creation, operation, and maintenance of the VXN Scan infrastructure and components" after the retirement of their former Chief Technology Officer; and Susan B. Stalzer, an employee of Strike 3 responsible for reviewing the content of their videos. Decl. of Patrick Paige in Support of Plaintiff's Mot. for Leave to Take Discovery Prior to a Rule 26(f) Conf., ECF No. 11-1 (January 10, 2025) ("Paige Decl."); Decl. of Jorge Arco in Support of

Plaintiff's Mot. for Leave to Take Discovery Prior to a Rule 26(f) Conf., ECF No. 11-2 (January 10, 2025) ("Arco Decl."); Decl. of Susan B. Stalzer in Support of Plaintiff's Mot. for Leave to Take Discovery Prior to a Rule 26(f) Conf., ECF No. 11-3 (January 10, 2025) ("Stalzer Decl."). Both of whom attest that the *prima facie* elements of copyright infringement have been met in this case. *See* Arco Decl.; Stalzer Decl. More specifically, Arco attests that he participated in the creation, implementation, and maintenance of VXN Scan and describes in detail how the infringement detection system works. Arco Decl. ¶¶ 11, 41–83. Arco writes that VXN Scan enables Strike 3 to identify the IP address that has been used to infringe its movies via the BitTorrent protocol. *Id.* ¶ 41. Paige analyzed data files from VXN scan and attested that the evidence supported the allegation that IP address 66.30.111.67 engaged in the data transaction at issue. Paige Decl. ¶ 26. Stalzer compared the digital media files obtained by VXN Scan with Strike 3's copyrighted works and attested that each digital media file was a copy of one of Strike 3's motion pictures that was identical, strikingly similar, or substantially similar to the original work. Stalzer Decl. ¶¶ 10–11.

      Some courts have expressed doubt as to whether Strike 3's geolocation technology used to identify the alleged infringer's IP address is precise enough to identify the individual who, in fact, downloaded and/or distributed the content in question. *See, e.g.*, *Strike 3 Holdings LLC v. Doe*, 331 F.R.D. 14, 16 (E.D.N.Y. 2019) ("Of course, Doe – the person who engaged in the allegedly infringing conduct in each case – might or might not be the same person as the subscriber of internet service associated with the IP address Strike 3 has identified. The assumption that the two are the same is tenuous, and . . . has grown more so over time ....... [I]t is no more likely that the subscriber to an IP address carried out.......the purported illegal downloading...... than to say an individual who pays the telephone bill made a specific telephone call.") (citing *In re BitTorrent Adult Film Copyright Infringement Cases*, 296 F.R.D. 80, 84

(E.D.N.Y. 2012) (report and recommendation), *adopted sub nom. Patrick Collins, Inc. v. Doe 1*, 288 F.R.D. 233 (E.D.N.Y. 2012)); *Strike 3 Holdings, LLC v. Doe*, No. 18-14114(JHR/JS), 2019 WL 5446239, at *7 (D.N.J. Oct. 24, 2019), *reversed by Strike 3 Holdings, LLC v. Doe*, No. 18-cv-2674-NLH-JS, 2020 WL 3567282 (D.N.J. June 30, 2020) ("The only material fact pleaded in Strike 3's complaints is that the listed IP address is associated with the downloading of Strike 3's works and the John Doe is the subscriber of the address. All other material averments in Strike 3's complaints, e.g., that the John Doe subscriber downloaded Strike 3's works, are conclusory statements, not facts."). *Strike 3 Holdings, LLC v. Doe*, 351 F. Supp. 3d 160, 162 (D.D.C. 2018), *reversed by Strike 3 Holdings, LLC v. Doe*, 964 F.3d 1203 (D.C. Cir. 2020) ("This [geolocation] method is famously flawed: virtual private networks and onion routing spoof IP addresses (for good and ill); routers and other devices are unsecured; malware cracks passwords and opens backdoors; multiple people (family, roommates, guests, neighbors, etc.) share the same IP address; a geolocation service might randomly assign addresses to some general location if it cannot more specifically identify another.").

Yet, two of these three courts were ultimately reversed on this point, because it is well-established that, at this stage, a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009).

In the context of motions for expedited, court-ordered discovery to determine the identity of an anonymous defendant, "the court is not asked to pass judgment on the strength of the plaintiff's allegations against the defendant, but to determine whether the plaintiff should have the opportunity to name that defendant in the first place." *Strike 3, LLC*, 964 F.3d at 1210.

Generally, courts allow plaintiffs to proceed against John Doe defendants, as long as discovery can be reasonably expected to uncover the defendant's identity. *Id.* "The focus, therefore, is not on whether the plaintiff will ultimately be able to prove each fact alleged in the complaint, but simply whether, if such facts are later proven to be true, the plaintiff has stated a legally actionable claim." *Strike 3 Holdings, LLC*, 2020 WL 3567282, at *5.

Given that, at this stage, the Court must accept Strike 3's factual allegations as true, the Court finds that Strike 3 has made a *prima facie* case of copyright infringement.

Accordingly, this factor weighs in favor of allowing expedited discovery to discover the identity of John Doe.

2. The Specificity of the Discovery Request

Strike 3's discovery request is specific and discrete. It seeks to subpoena Cox Communications to learn "the true name and address of the Defendant to whom the ISP assigned an IP address as set forth in the Complaint." Proposed Order on Mot. for Leave to Serve Third Party Subpoena Prior to a Rule 26(f) Conf., ECF No. 10-1 (April 15, 2025) ("Proposed Order").

Accordingly, given the narrow scope of the discovery sought, the Court finds that this factor weighs in favor of granting leave to serve the subpoena.

3. The Absence of Alternative Means

Strike 3 argues that "[t]here is simply no alternative means by which Plaintiff can identify Doe Defendant absent the present subpoena." Mem. at 8. It notes that individuals using the internet are generally anonymous, and that only the ISP know who a given IP address is assigned to. *Id.* There is no public registry of IP addresses or alternative source for this information. *Id.* at 7.

Accordingly, because there is no alternative means for Strike 3 to identify the Doe Defendant, the Court finds that this factor weighs in favor of granting expedited discovery.

4. The Need for Subpoenaed Information to Advance the Claim

Strike 3 argues that the subpoenaed information is necessary to advance its claim against the Doe Defendant, because without learning their identity and address, it cannot properly serve the Defendant. *Id.* at 8.

Other courts have agreed with this reasoning in similar contexts. *See, e.g.*, *Arista Records*, 589 F. Supp. 2d at 153 ("Because learning the true identities of the pseudonymous individuals alleged to have violated Plaintiffs' copyrights is essential to their prosecution of this litigation, Plaintiffs have demonstrated their need for expedited discovery."); *Malibu Media, LLC v. Doe*, No. CV 15-3504 JFB (SIL), 2016 WL 4444799, at *11 (E.D.N.Y. Aug. 23, 2016) (allowing expedited discovery because "[w]ithout learning the Defendant's identity and address, the Plaintiff will be unable to serve process and pursue its claim" (citation omitted)).

Accordingly, because Strike 3 would not be able to pursue this litigation in the absence of the subpoenaed information, the Court finds that this factor weighs in favor of allowing expedited discovery.

    5. The Defendant's Expectation of Privacy

Strike 3 argues that the Doe Defendant has a minimal privacy interest. It writes that "[t]here is no expectation of privacy in 'subscriber information provided to an internet provider,' such as an IP address." Mem. at 9 (quoting *Strike 3 Holdings*, No. 3:17-cv-1680 (CSH), 2017 WL 5001474, at *5 (D. Conn. Nov. 1, 2017) (citing *United States v. Ulbricht*, 858 F.3d 71, 84, 96 (2d Cir. 2017))). Many courts have affirmed that "ISP subscribers have a minimal expectation of privacy in the sharing of copyrighted material," even though they acknowledge that identification in cases like these, "which involve[] the viewing and dissemination of adult movies, may cause embarrassment[.]" *Strike 3 Holdings, LLC v. Doe*, No. 19-CV-5866 (AT) (RWL), 2019 WL 4493342, at *2 (S.D.N.Y. Aug. 21, 2019) (quoting *Malibu Media, LLC*, 2013 WL 3732839, at *6).

11

Other courts have held that "[d]efendants have a legitimate privacy interest in their online activity." *Strike 3 Holdings, LLC v. Doe*, 2020 WL 3567282, at *10; *see also Malibu Media, LLC*, 2013 WL 3732839, at *5 (recognizing "a limited First Amendment privacy interest in anonymous internet usage, including the use of peer-to-peer file sharing networks"). But even these courts have emphasized that this privacy interest cannot be used by copyright infringers as a shield. *See Arista Records*, 604 F.3d at 119 ("The First Amendment right to communicate anonymously is, of course, not a license to . . . infringe copyrights . . . Nor is it an absolute bar against disclosure of one's identity in a proper case[.]"). "[T]he Court's duty is [therefore] to strike a proper balance between Defendants' privacy interests and Plaintiff's rights to protect its copyrighted material." *Strike 3 Holdings, LLC v. Doe*, 2020 WL 3567282, at *10.

The Court finds that the Doe Defendant has a limited privacy interest in their online activity, which somewhat weighs against allowing expedited discovery. Yet, where, as here, the Defendant is accused of copyright infringement, and the only way for the Plaintiff to vindicate their rights requires the identification of the Defendant, this right cannot outweigh the Plaintiff's interest in the subpoenaed information.

Accordingly, as many other courts in this District and within this Circuit have done, the Court will grant the motion for leave to serve the third-party subpoenaed, and, at the same time, enter a protective order to protect the Defendant's interests.[7]

---

[7] The Court notes that, although not relevant at this stage of the litigation, there remain significant unresolved legal issues that Doe could raise in defending against this lawsuit. First, it is not clear whether obscene or pornographic content is entitled to copyright protections. *See, e.g.*, *Strike 3 Holdings, LLC*, 2021 WL 4776519, at *2 ("[T]he caselaw is unsettled as to whether pornographic content . . . is entitled to protection under copyright law[.]"); *Next Phase Distribution, Inc. v. John Does 1-27*, 284 F.R.D. 165, 171 (S.D.N.Y. 2012) ("[T]he Court recognizes that, if the Motion Picture is considered obscene, it may not be eligible for copyright protection[.]"); *Liberty Media Holdings, LLC v. Swarm Sharing Hash File and Does 1–38*, 821 F. Supp. 2d 444, 447 n.2 (D. Mass. 2011) (noting that it is "unsettled in many circuits, whether pornography is in fact entitled to protection against copyright infringement"). Second, some courts have found that Doe Defendants in these lawsuits have standing to counterclaim for attorneys' fees, declaratory relief, and other remedies, even where Strike 3 voluntarily dismisses their case. *See, e.g.*, *Strike 3 Holdings, LLC v. Doe*, 849 F. App'x 183, 185–86 (9th Cir. 2021) (holding that "[c]ontrary to Strike 3's argument, the district court correctly held that Doe retained standing to pursue his declaratory relief counterclaim despite Strike 3 voluntarily dismissing its complaint without prejudice" and upholding the district court's award of attorneys' fees).

IV.   **CONCLUSION**

For the foregoing reasons, Strike 3's motion is **GRANTED**, subject to the following conditions and limitations:

1. Plaintiff may subpoena Defendant's ISP only to obtain Defendant's name and address, but not Defendant's e-mail or telephone number. Plaintiff may only use Defendant's name and address, if obtained by Defendant's ISP, for the purposes of this litigation; Plaintiff is ordered not to disclose Defendant's name or address, or any other identifying information other than Defendant's ISP number, that Plaintiff may subsequently learn. Plaintiff shall not threaten to disclose any of Defendant's identifying information.

2. Defendant will be permitted to litigate this case anonymously unless and until this Court orders otherwise and only after Defendant has had an opportunity to challenge the disclosure. Therefore, Plaintiff is ordered not to publicly file any of Defendant's identifying information and to file all documents containing Defendant's identifying information under seal.

3. Plaintiff may immediately serve a Rule 45 subpoena on Defendant's ISP to obtain Defendant's name and current and permanent address. Plaintiff is expressly not permitted to subpoena the ISP for Defendant's e-mail addresses or telephone numbers. Plaintiff shall serve Defendant's ISP with a copy of the Complaint, this Order, and the subpoena.

4. After having been served with the subpoena, the ISP will delay producing to Plaintiff the subpoenaed information until after it has provided Defendant John Doe with:

    a. Notice that this suit has been filed naming Defendant as the one that allegedly downloaded copyright protected work;

    b. A copy of the subpoena, the Complaint filed in this lawsuit, and this Order; and

    c. Notice that the ISP will comply with the subpoena and produce to Plaintiff the information sought in the subpoena unless, within sixty (60) days of service of the subpoena on Defendant by the ISP, Defendant files a motion to quash the subpoena or for other appropriate relief in this Court. If a timely motion to quash is filed, the ISP shall not produce the subpoenaed information until the Court acts on the motion.

5. Defendant's ISP will have sixty (60) days from the date of service of the Rule 45 subpoena upon it to serve Defendant John Doe with a copy of the Complaint, this Order, and the subpoena. The ISP may serve Defendant John Doe using any reasonable means, including written notice sent to their last known address, transmitted either by first class mail or via overnight service.

6. Defendant John Doe shall have sixty (60) days from the date of service of the Rule 45 subpoena and this Order upon them to file any motions with this Court contesting the subpoena (including a motion to quash or modify the subpoena), as well as any request to litigate the subpoena anonymously. The ISP may not turn over the identifying

information of Defendant to Plaintiff before the expiration of this sixty (60) day period. Additionally, if Defendant or the ISP files a motion to quash or modify the subpoena, or a request to litigate the subpoena anonymously, the ISP may not turn over any information to Plaintiff until the issues have been addressed and the Court issues an order instructing the ISP to resume turning over the requested discovery.

7. Defendant's ISP shall preserve any subpoenaed information pending the resolution of any timely filed motion to quash.

8. Defendant's ISP shall confer with Plaintiff and shall not assess any charge in advance of providing the information requested in the subpoena. If Defendant's ISP receives a subpoena and elects to charge for the costs of production, it shall provide a billing summary and cost report to Plaintiff.

9. Any information ultimately disclosed to Plaintiff in response to a Rule 45 subpoena may be used by Plaintiff solely for the purpose of protecting Plaintiff's rights as set forth in its complaint.

10. Plaintiff shall file on the docket, under seal, the terms of any settlement agreement with Defendant John Doe. Should Plaintiff choose to dismiss this case for reasons other than settlement, it shall file a statement so indicating and identifying those reasons on the docket. Failure to comply with this or any of the foregoing conditions will result in sanctions. Even after dismissal, the Court will retain jurisdiction for the purposes of enforcing this order.

SO ORDERED at New Haven, Connecticut, this 18th day of July, 2025.

                                                */s/ Victor A. Bolden*
                                                Victor A. Bolden
                                                United States District Judge